IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ELIZABETH A. MCELROY, )
    Plaintiff, )
)
v. ) 2:15-CV-326
)
COMMISSIONER OF SOCIAL )
SECURITY, )
    Defendant. )

MEMORANDUM

Mitchell, M.J.:

    Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the plaintiff's motion (ECF No. 13) will be granted, the defendant's motion (ECF No. 23) will be denied and the matter will be remanded to the Commissioner for further proceedings.

    On March 11, 2015, Elizabeth A. McElroy, by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) for review of the Commissioner's final determination disallowing her claim for Supplemental Security Income benefits under Sections 1614 and 1631 of the Act, as amended, 42 U.S.C. § 1381 cf.[1]

    The instant application for Supplemental Security Income Benefits was filed on January 29, 2010 (R.262-266). On April 1, 2010, benefits were denied (R.185-189). On May 6, 2010, the plaintiff requested a hearing (R.192-193) and pursuant to that request a hearing was held on June 23, 2011 (R.92-109). In a decision dated June 27, 2011, benefits were denied (R.166-180). On August 17, 2011, the plaintiff requested reconsideration of the denial of benefits (R.208) and on January 3, 2013 the matter was remanded for further consideration (R.181-184). Another

---

[1] The plaintiff had filed an earlier application on June 4, 2007, which was denied on October 5, 2009 (R.150-160).

hearing was conducted on June 19, 2013 (R.110-149) and benefits were denied on September 12, 2013 (R.10-24). On October 14, 2013 reconsideration was requested (R.8-9), and on January 14, 2015, the Appeals Council affirmed the prior determination (R.1-6). The instant complaint was filed on March 11, 2015.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r. 529 F.3d 198 (3d Cir. 2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir. 1999)

The purpose of the Supplemental Security Income Program is to provide additional income to persons of limited resources who are aged, blind or disabled persons. 42 U.S.C. §1381; Chalmers v. Shalala, 23 F.3d 752 (3d Cir. 1994). To be eligible for such benefits, an individual's income must not exceed a certain established maximum and he/she must fulfill certain eligibility requirements.

As set forth in 20 C.F.R. § 416.905(a) disability is defined as:

> the inability to do any substantial gainful activity by reason of
> any medically determinable physical or mental impairment
> which can be expected to result in death or which has lasted or
> can be expected to last for a continuous period of not less than 12
> months.

In addition, a person will be considered disabled if he/she is

> (a) ... permanently and totally disabled as defined under a State
> plan approved under title XIV or XVI of the Social Security Act,
> as in effect for October 1972; (b) ... received aid under the State
> plan ... for the month of December 1973 and for at least one
> month prior to July 1973; and (c) ... continue[s] to be disabled as
> defined under the State plan.

20 C.F.R. § 416.907.

A physical or mental impairment is defined in 20 C.F.R. § 416.908 as an:

> impairment [which] result[s] from anatomical, physiological, or
> psychological abnormalities which [are demonstrated] by
> medically acceptable clinical and laboratory diagnostic
> techniques.

For purposes of determining whether or not the plaintiff met the eligibility requirements, certain evidence was considered by the Commissioner.

At the hearings held on August 14, 2009, June 23, 2011 and June 19, 2013 (R.64-149), the plaintiff appeared with counsel (R.66, 94, 112) and testified that she was born on January 18, 1959 (R.67); that she completed the twelfth grade (R.68, 95, 113); that she receives Public Assistance (R.73) and that she worked in a fast food restaurant in 2008 and as a cafeteria worker (R.72, 74, 95, 96).

The plaintiff also testified that she has difficulty dealing with everyday problems (R.69); that she stopped drinking (R.70, 106); that she experiences panic attacks and depression and suffers from a bipolar disorder (R.70, 103, 121, 140); that she has COPD, emphysema, bronchitis, asthma, high blood pressure and reflux disease (R.70, 99, 114); that she smokes

3

(R.70,78,116); that she experiences sciatica and back pain (R.71, 80, 102, 114); that she gets dizzy and experiences hot flashes from her medications (R.74); that she can lift 3-4 pounds and stand and sit for up to thirty minutes (R.76, 77, 118); that she has difficulty getting along with people (R.79, 124) and that she has difficulty sleeping (R.85-86).

At the hearings, vocational experts were also called upon to testify. Her prior work was classified as light to medium unskilled work (R.88, 108). When asked to assume a person of the plaintiff's age and work experience who was limited to light work with certain environmental restrictions, the vocational experts testified that such an individual could not perform the plaintiff's prior work (R.88, 108, 146-147), but could perform a wide range of light work (R.89, 108, 147).

In addition, certain other evidence was considered.

The plaintiff was treated at the Greenbriar Treatment Center for alcohol abuse from August 30, 2006 through October 12, 2006 and again from April 3, 2007 through July 26, 2007 (R.439-440).

The plaintiff was treated by Dr. Mitchell Patti on December 21, 2009 for chronic obstructive lung disease, fatigue, tobacco use, reflux, hyperlipidemia and hypertension (R.383-386).

The plaintiff was treated by Dr. Denisa Firoiu between November 11, 2009 and January 21, 2010 for an upper respiratory infection, fatigue and hypothyroidism (R.387-403).

The plaintiff received out-patient treatment at St. Margaret Memorial Hospital between March 26, 2009 and February 1, 2010 for a degenerative knee and disc changes (R.404-417).

In a psychiatric evaluation performed on March 8, 2010, Dr. Sharon Kohnen diagnosed a bi-polar disorder, anxiety and alcohol dependence (R.441-446).

In a residual mental health functional capacity assessment completed on March 16, 2010, John Rohar, Ph.D. diagnosed an affective disorder and substance addiction. Any limitations were said to be insignificant to moderate. He concluded that the plaintiff could be gainfully employed in competitive work (R.447-462).

In a report of a residual functional capacity assessment completed on April 1, 2010, Dr. Juan B. Mari-Mayans indicated that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds and stand, walk or sit for about six hours. He noted no other restrictions, including no environmental limitations (R.463-469).

The plaintiff received treatment at Family Services of Western Pennsylvania between December 29, 2008 and February 18, 2013 for help with coping skills (R.418-438, 470-521, 522-568).

The plaintiff was treated at St. Margaret's Hospital between May 12, 2011 and April 2, 2013 for episodes of acute kidney failure and cardiac problems. An indwelling kidney catheter was inserted (R.573-665).

The plaintiff was treated at the Advanced Pain Medication Center between September 1, 2011 and April 22, 2013 for low back and neck pain (R.733-802).

The plaintiff was treated by Dr. Gopinath Rajupet between February 3, 2009 and May 1, 2013 for a chronic airway obstruction, stable hyperlipidemia, stable hypertension, stable gastroesophageal reflux, alcohol abuse and back pain. Medication was prescribed. He concluded on May 1, 2013 that the plaintiff was unable to work; that she could occasionally lift up to ten pounds, stand or walk less than two hours and sit less than six hours; that she had depression that caused her fatigue and required her to take rest periods during the day; that she had occasional postural limitations and numerous environmental restrictions; that her pain had resulted in loss of

interest in almost all activities, sleep disturbance, decreased energy, difficulty concentrating or breathing; and that she had marked restrictions of activities of daily living, in maintaining social functioning and in concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (R.358-382, 569-572, 675-732).

The plaintiff was treated at St. Margaret's Pulmonary Consultants between December 21, 2009 and May 21, 2013 for chronic obstructive pulmonary disease and tobacco usage. Medication was prescribed (R.803-819).

> Based on the evidence presented, the Commissioner determined:
>
> The claimant has not engaged in substantial gainful activity since January 19, 2010…
>
> The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD); degenerative disc disease of the cervical and lumbar spines; and bipolar disorder…
>
> While the record reflects evidence of hypertension and esophageal reflux, such conditions are being managed medically and should be amenable to proper control…
>
> Medical records further reflect that the claimant was treated successfully for pulmonary embolism, rhabdomyolysis, and renal insufficiency. Because these conditions do not meet the [one year] duration requirement and because there is no evidence they have resulted in any permanent functional limitation, the undersigned finds that they are not severe impairments.
>
> Lastly, undersigned considered the potential impact of obesity in causing or contributing to coexisting impairments as required … However, there is no evidence of any specific or quantifiable impact… Accordingly, the undersigned finds that such impairment is nonsevere…
>
> Listing 1.04, relating to disorders of the spine, requires degenerative disc disease resulting in compromise of a nerve root … The alleged impairments do not meet this Listing as physical examinations documented normal sensation and reflexes, negative straight leg raising, and normal gait and stance…
>
> With regard to Listing 3.02, relative to chronic pulmonary insufficiency, the evidence fails to document the requisite levels of chronic obstructive pulmonary

disease, chronic restrictive ventilator disease, or chronic impairment of gas exchange due to clinically documented pulmonary disease…

The severity of the claimant's mental impairment does not meet or medically equal the criteria of Listing 12.04...

In activities of daily living the claimant has no restriction…

In social functioning, the claimant has moderate difficulties. The claimant reported that she has difficulty getting along with/relating to others and that she avoids crowds due to nervousness. However, she spends time with family and friends regularly, shops in stores for groceries and laundry items, and attends AA meetings…

With regard to concentration, persistence or pace, the claimant has moderate difficulties… However, she pays bills, counts change, handles a savings account, uses a checkbook and/or money orders, and watches television. Further, treatment records indicate the claimant remained busy and focused on motivating her son to secure employment and that she had been helping her father with paperwork. The record therefore supports a finding that the claimant has no more than moderate limitation with regard to concentration, persistence or pace.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

Because the claimant's mental impairments does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied…

[T]he evidence fails to establish the presence of the "paragraph C" criteria because it does not document: repeated episodes of decompensation, each of extended duration; a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement…

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work … lifting up to 20 pounds occasionally and lifting/carrying up to 10 pounds frequently, except that she must avoid concentrated exposure to extreme cold, extreme heat, humidity, environmental irritants such as fumes, odors, dusts, and gases, poorly ventilated areas, and chemicals. Additionally, the claimant is limited to simple,

routine and repetitive tasks and work that is isolated from the public with only occasional supervision and only occasional interaction with coworkers…

The allegations of disability by the claimant are out of proportion to and inconsistent with the medical evidence of record… While treatment records indicate the claimant was prescribed oxygen at night, recent physician notes reflect that she "does not need any oxygen at this present time"….

A treating physician, Gopinath Rajupet, M.D., opined that the claimant had no capacity to work secondary to back pain and depression. He further opined that the claimant had marked restrictions of activities of daily living, marked difficulty in maintaining social functioning, and deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner due to chronic, severe pain. Similarly, he opined in a physical ability assessment that the claimant could perform less than sedentary work due to back pain and shortness of breath and that she had postural and environmental limitations. The undersigned afforded these opinions little weight because they are inconsistent with the evidence of record, including the reported activities of the claimant. Specifically, the record reflects that the claimant cares for her aging father, visiting him regularly, providing support, assisting with household chores, and helping with paperwork….

The State agency psychological consultant, John Rohar, Ph.D. determined that the claimant could perform simple, routine, and repetitive work in a stable environment, perform one and two step tasks, make simple decisions, ask simple questions and accept instruction, and function in production oriented jobs requiring little independent decision making. Additionally, he determined that the claimant had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. The undersigned afforded these assessments substantial weight because they are generally consistent with and supported by the record as a whole…

In sum, the above residual functional capacity assessment is supported by the evidence as a whole. For the reasons set forth above, the claimant's subjective complaints are less than fully credible, and the objective medical evidence does not support the alleged severity of symptoms. Accordingly, the undersigned finds that the claimant can do work subject to the above residual functional capacity at a level consistent with the regular and continuing performance of substantial gainful activity…

The claimant is unable to perform any past relevant work…

Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform…

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of those factors the individual would be able to perform the requirements of representative occupations….
>
> The claimant has not been under a disability, as defined in the Social Security Act… (R.15-24).

Plaintiff presents three arguments challenging the determinations of the Commissioner: 1) the Administrative Law Judge (ALJ) mechanically applied the "grids" to find that the plaintiff was not disabled, but because she fell within a "borderline age situation," the ALJ should have considered whether treating her as "advanced age" would have made a difference and indeed, it would have; 2) the ALJ erred by rejecting the opinion of plaintiff's treating physician, Dr. Rajupet, without acknowledging that he is a Board-certified internist who has treated her for several conditions for 7-8 years and his opinions were supported by the medical records, and the ALJ further erred in improperly concluding that she was a caretaker for her ailing father when the record contains little information about this issue and the ALJ did not pursue it at the hearing; and 3) the ALJ failed to properly evaluate her subjective complaints and misconstrued the record in concluding that the COPD was not causing her problems (and that she was no longer taking oxygen) despite 7 documented exacerbations of this impairment between April 2011 and December 2012, and the ALJ selectively quoted from certain records which indicated that her neck and back pain were not causing her distress but ignored others that said otherwise and concluded that the record did not support complaints of loss of muscle strength and sensory deficits when she never made such complaints.

9

The Commissioner responds that: 1) the plaintiff was more than four full months from reaching the next age category and there is no consensus that this presents a "borderline age situation" and even if it did, the ALJ did not mechanically apply the grids but relied on a vocational expert and there are no "additional vocational adversities" to justify referring to the older age category; 2) Dr. Rajupet's May 1, 2013 opinion is a "checkbox" form which is entitled to little weight, and the limitations therein are contradicted by Dr. Rajupet's own notes, Dr. Mari-Mayans' residual functional capacity evaluation and Dr. Rohar's mental assessment; and 3) the ALJ properly found her to be not entirely credible because her complaints were not supported by the record and an ALJ's credibility findings are virtually unreviewable.

<u>Borderline Age Situation</u>

The regulations provide that:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 416.963(b). "If the ALJ does not properly apply [this section], and if proper application of that regulation could change the ALJ's determination, the matter must be remanded for further consideration." <u>Davis v. Astrue</u>, 2009 WL 3241853, at *7 (W.D. Pa. Oct. 5, 2009) (McVerry, J.) (citing <u>Kane v. Heckler</u>, 776 F.2d 1130, 1134 (3d Cir. 1985). Judge McVerry noted that, in a non-precedential opinion, the Court of Appeals had held that 106 days is borderline, <u>Lucas v. Barnhart</u>, 184 F. App'x 204 (3d Cir. 2006); that the Tenth Circuit has held that six months is borderline, <u>Cox v. Apfel</u>, 1998 WL 864118, at *4 (10th Cir. Dec. 14, 1998); that among the district courts in the Third Circuit, seven months has been held to be borderline, <u>Williams v. Bowen</u>, 1987 WL 9148, at *2 (E.D. Pa. Apr. 6, 1987); and that an Appeals Council

Interpretation "appears to establish that the Appeals Council believes there is a six-month window in which a claimant's situation is 'borderline,'" Russell v. Comm'r of Social Security, 20 F. Supp. 2d 1133 (W.D. Mich. 1998). Id. In Davis, the plaintiff was 139 days from reaching the next age category. Id. at *6.

In this case, the plaintiff was only 128 days, or slightly over four months, from reaching age 55 as of the date of the ALJ's decision, which falls well within the ranges that courts have found present a borderline age situation.[2] In Davis, Judge McVerry noted that, if the rule for the age 55-and-older category had been employed, a determination of disabled would have been compulsory. The same analysis applies to this case: the plaintiff would have been found "not disabled" under Rule 202.14, given her age (closely approaching advanced age), high school education and lack of transferrable skills; but using Rule 202.06 for a person of advanced age with her same education and lack of transferrable skills would yield a finding of "disabled." As Judge McVerry noted in another case: "In a situation such the case sub judice, where Plaintiff has a limited history of unskilled work and his residual functional capacity is limited to light work, chronological age limits vocational adaptability considerably as each age category classifies these factors differently." Istik v. Astrue, 2009 WL 382503, at *3 (W.D. Pa. Feb. 13, 2009). Yet, in this case, the ALJ did not discuss this issue at all.

The Commissioner argues that, because the ALJ consulted a vocational expert, the grids were not applied "mechanically" and there is no need to make any further adjustments and that, even considering her situation as borderline, the plaintiff fails to present "additional vocational

---

[2] By mistake, the plaintiff typed "158 days" in her brief (ECF No. 14 at 4), which would be over five months, but there were only 128 days between the date of the ALJ's decision (September 12, 2013) and the date the plaintiff turned 55 on January 18, 2014. The Commissioner adopts the false 158 number in her brief (ECF No. 24 at 4), carefully stating that the plaintiff "alleges" this information.

11

adversities" that would justify using the higher age to evaluate her. The first argument is not supported and the second one is belied by the record.

The Commissioner cites an Appeals Council interpretation ("HALLEX"), which states that:

> Additional vocational adversities are the presence of an additional impairment(s) which infringes upon—without substantially narrowing—a claimant's remaining occupational base; or the claimant may be barely literate in English, have only a marginal ability to communicate in English, or have a history of work experience in an unskilled job(s) in one isolated industry or work setting. (An isolated industry would be such as fishing or forestry.) Other adverse circumstances in individual cases may justify using the higher age category.

HALLEX § II-5-3-2, 2003 WL 25498826.

The Commissioner argues that the plaintiff has no problem speaking English and does not have a work history in an isolated industry. This is true, but she does have additional impairments beyond those that the ALJ considered "severe" and which could infringe upon her remaining occupational base, including: hypertension, esophageal reflux, pulmonary embolism, rhabdomyolysis, renal insufficiency and obesity. (R.16.) Or there might be "other adverse circumstances" that apply, but because the ALJ did not discuss this issue, the Court cannot ascertain whether substantial evidence supports the Commissioner's conclusion. Therefore, remand is required for further consideration.

    Treating Physician Doctrine

Pursuant to the treating physician doctrine, "a court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993). The regulations provide that the ALJ should generally give more weight to an examining source than a non-examining source, more weight to opinions from

treating sources than non-treating sources, more weight based on the length of the physician's treatment, more weight to opinions that are consistent with one another, and more weight to the opinions of specialists than those of non-specialists. 20 C.F.R. § 416.927(c).

However, this rule does not mean that the ALJ or the court is obligated to accept conclusions of the treating physician if they are unsupported by medical evidence, and a claimant's residual functional capacity (RFC) is an administrative finding reserved to the Commissioner. 20 C.F.R. § 416.927(d)(2). Moreover, the final responsibility for determining whether a claimant is disabled is reserved exclusively to the Commissioner, not to any particular medical source. 20 C.F.R. § 416.927(d)(1).

Plaintiff notes that Dr. Rajupet is a Board-certified internist (a specialist) who treated her on a routine basis for COPD, chronic pain and depression since at least March 2009. On May 1, 2013, Dr. Rajupet submitted an opinion stating that she could occasionally lift/carry less than 10 pounds, stand/walk less than 2 hours and sit less than 2 hours in an 8-hour workday, that she should limit her exposure to poor ventilation, heights, moving machinery, vibration, temperature extremes, chemicals, wetness, dust, noise, fumes, odors, gases and humidity, that her symptoms contribute to fatigue and necessitate rest periods, that she suffers from chronic pain syndrome associated with loss of interest in almost all activities, sleep disturbance, decreased energy, and difficulty concentrating or breathing, and that her pain causes marked restrictions in activities of daily living, social functioning and concentration, persistence or pace. (R.569-572.)

These findings would lead to a conclusion that the plaintiff was disabled, but the ALJ gave Dr. Rajupet's opinion "little weight." Plaintiff contends that, in so doing, the ALJ not only failed to address most of the factors identified above, but that the factor upon which the ALJ did rely—inconsistency with the record—contained errors. This Court agrees.

As the plaintiff observes, the ALJ did not mention that Dr. Rajupet was a specialist, that he had treated her for 7-8 years and that he had treated her for several conditions. Rather, the ALJ simply discounted Dr. Rajupet's opinions as "inconsistent with the evidence of record, including the reported activities of the claimant. Specifically, the record reflects that the claimant cares for her aging father, visiting him regularly, providing support, assisting with household chores, and helping with paperwork." (R.22.) This is a very odd statement.

As the plaintiff notes, the record contains only a few notes that she was planning to spend the weekend with her father or that she was "caring for her disabled father" (R.524, 534), with no specific information about what activities she was doing. Nor did the ALJ explore this topic at the hearing. Thus, it cannot be said that substantial evidence supports this conclusion.

The Commissioner argues that the ALJ properly rejected Dr. Rajupet's opinion because it was a "checkbox form" which is generally considered weak evidence at best. Smith v. Astrue, 359 F. App'x 313, 316 (3d Cir. 2009) (citing Mason, 994 F.2d at 1065). In the Smith case, the court found that a treating physician's report that the claimant had such difficulty with movement that she was essentially bedridden was inconsistent with a consultative examiner's examination and conclusion that she had full range of motion in her joints without swelling or tenderness, as well as the treating physician's own notes that she had a good range of motion.

In this case, by contrast, the ALJ rejected the RFC form completed by Dr. Rajupet but relied instead on another "checkbox" form completed by a state medical consultant. Dr. Juan Mari-Mayans checked boxes indicating that the plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently, that she could sit and stand about 6 hours in an 8-hour workday and that she had no other limitations, including no environmental limitations. (R.464-466.) The ALJ

imposed a number of environmental limitations based on the plaintiff's COPD (as Dr. Rajupet had done), raising the question of how thorough Dr. Mari-Mayans' examination was.

Plaintiff also notes that the Appeals Council had previously remanded this case, directing the ALJ to:

> Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence. The additional evidence may include, if warranted and available, appropriate physical and mental status consultative examinations and medical source statements about what the claimant can still do despite the impairments.

(R.182.) That order was entered on January 3, 2013, but the opinions of Dr. Mari-Mayans and Dr. Rohar (concerning the plaintiff's mental RFC) were submitted in 2010, which means they were already in the record at the time of the Appeals Council's order and no new consultative examinations were obtained thereafter. The ALJ did not explain how she could rely on the opinions of these two consultative examiners to deny the plaintiff's claim in September 2013 after the Appeals Council had remanded the case for her to obtain additional evidence in January 2013. For this reason also, the case should be remanded.

Plaintiff's Subjective Complaints

The ALJ, as the finder of fact, is given great discretion in making credibility findings. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983) (providing that credibility determinations as to a claimant's testimony regarding his limitations are for the ALJ to make). "A district court will give great deference to the ALJ's credibility determination because he or she is best equipped to judge the claimant's demeanor and attitude." Mallough v. Astrue, 2009 WL 982795, at *6 (W.D. Pa. Apr. 9, 2009) (Standish, J.) (citing Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003)).

However, the ALJ is not permitted to reject a plaintiff's subjective complaints based upon

an incorrect reading of the record, which is what appears to have occurred in this case. Specifically, the ALJ stated that: "While treatment records indicate the claimant was prescribed oxygen at night, recent physician notes reflect that she 'does not need any oxygen at this present time.'" (R.19.) The record reflects that the plaintiff was on two liters of oxygen per night (R.803, 806, 808) and she testified to this fact at two hearings (R.99, 116) and wrote it on a medication list (R.356). The ALJ appears to have misconstrued the statement about her not needing oxygen "at this present time" to mean she did not need it at all, rather than that she did not need it at her appointment.

As the plaintiff observes, the medical record also demonstrates that, between April 2011 and December 2012, she experienced at least 7 COPD exacerbations despite adherence to her treatment regimen, which included nighttime oxygen. (R.664, 666, 685-688, 690, 693, 697, 699, 705.) The ALJ's analysis does not consider the fact that her ability to work during such exacerbations would have been compromised, nor does the determination discuss whether the exacerbations would interfere with her ability to work on a regular and continuing basis.

In addition, with respect to neck and back pain, the plaintiff notes that the ALJ's comment that she exhibited normal muscle strength and no sensory deficits is irrelevant, because the plaintiff never alleged that her symptoms caused a loss of muscle strength or sensory deficits. Thus, the absence of such findings is not material.

Finally, the ALJ did not accept the plaintiff's subjective complaints of pain. Plaintiff argues that: "Where medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." Mason, 994 F.2d at 1067-68 (citations omitted). As noted above, the ALJ did not arrange for an additional consultative examination (despite the fact that the

Appeals Council remand directed such action) or obtain testimony from a medical expert. Instead, she appears to have relied on her own lay analysis of the raw medical data, which is not permitted. See Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir. 1999). For all of these reasons, the case will be remanded to the Commissioner for further review.

    An appropriate order will be entered.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ELIZABETH A. MCELROY,        )
    Plaintiff,            )
                          )
v.                            )   2:15-CV-326
                          )
COMMISSIONER OF SOCIAL        )
SECURITY,                     )
    Defendant.            )

<u>ORDER</u>

AND NOW, this 15th day of December 2015, for the reasons set forth in the Memorandum filed contemporaneously with this Order, the Plaintiff's Motion for Summary Judgment (ECF No. 13) is GRANTED; the Defendant's Motion for Summary Judgment (ECF No. 23) is DENIED, and the matter is remanded to the Commissioner is for further proceedings.

                                            s/ Robert C. Mitchell
                                            United States Magistrate Judge